MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
ALFREDO   GARCIA-DANIEL,   JILMAR
DANIEL  RAMIREZ,  ANTONY  ODIAS
MEJIA SAPON, and OMAR MORALES,
*individually and on behalf of others similarly
situated,*

*Plaintiffs*,

-against-

EL PASO TAQUERIA CORP. (d/b/a EL
PASO), EL PASO TAQUERIA 1643 CORP.
(d/b/a  EL  PASO),  DAVID  GARNELO,
RODRIGO    ABRAJAM    and    ANGEL
GARNELO    (A.K.A.    ANGEL    TEPOS),

*Defendants.*

------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Alfredo Garcia-Daniel, Jilmar Daniel Ramirez, Antony Odias Mejia Sapon, and

Omar Morales, individually and on behalf of others similarly situated (collectively, "Plaintiffs"),

by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and

belief, and as against El Paso Taqueria Corp. (d/b/a El Paso), El Paso Taqueria 1643 Corp. (d/b/a

El Paso), (collectively, "Defendant Corporations"), David Garnelo, Rodrigo Abrajam, and Angel

Garnelo (a.k.a. Angel Tepos), allege as follows:

**NATURE OF THE ACTION**

       1.      Plaintiffs are former employees of El Paso Taqueria Corp. (d/b/a El Paso), El Paso

Taqueria 1643 Corp. (d/b/a El Paso), David Garnelo, Rodrigo Abrajam, and Angel Garnelo (a.k.a.

Angel Tepos) (collectively "Defendants").

2.      Defendants own, operate, or control a Mexican restaurant located at 1642 Lexington Avenue, New York, NY 10029 under the name El Paso.

3.      Upon information and belief, individual defendants David Garnelo, Rodrigo Abrajam, and Angel Garnelo (a.k.a. Angel Tepos) serve or served as owners, managers, principals, or agents of Defendant Corporations and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were ostensibly employed as delivery workers, but they were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including but not limited to cleaning and peeling vegetables, picking and stocking avocado, making guacamole, cutting and peeling lemon and chicken, cooking food, preparing sauces, sweeping, mopping, cleaning the fridge and freezer, cleaning the wash tops, throwing out garbage, deconstructing and tying boxes, shopping for missing items at the supermarkets and other stores, stocking the kitchen supplies, bringing up food from the basement into the kitchen, moving and stocking containers, stocking the fridge with sodas, assembling deliveries and carrying deliveries down to the basement, (hereinafter the "non-tipped, non-delivery duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality Plaintiffs' duties required greater or equal time spent in non-tipped, non-delivery duties.

9.      Regardless, at all times Defendants paid these plaintiffs at a rate that was either equal to or lower than the required tip-credit rate.

10.      Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. §146-2.9).

11.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate (which they failed to do on some occasions), by designating them as delivery workers instead of non-tipped employees.

12.      In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tips and making unlawful deduction from Plaintiffs' wages.

13.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New

York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Mexican restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

19.    Plaintiff Alfredo Garcia-Daniel ("Plaintiff Garcia-Daniel" or "Mr. Garcia-Daniel") is an adult individual residing in Bronx County, New York. Plaintiff Garcia-Daniel was employed by Defendants from approximately January 2016 until on or about July 8, 2017.

20.    Plaintiff Jilmar Daniel Ramirez ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in New York County, New York. Plaintiff Ramirez was employed by Defendants from approximately September 2016 until on or about June 2017.

21.     Plaintiff Antony Odias Mejia Sapon ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Queens County, New York. Plaintiff Mejia was employed by Defendants from approximately August 2016 until on or about May 15, 2017.

22.     Plaintiff Omar Morales ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Bronx County, New York. Plaintiff Morales was employed by Defendants from approximately June 2015 until on or about April 2017.

*Defendants*

23.     At all relevant times, Defendants own, operate, or control a Mexican restaurant located at 1642 Lexington Avenue, New York, NY 10029 under the name "El Paso."

24.     Upon information and belief, El Paso Taqueria Corp. is a domestic Corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 237 East 116th Street, New York, NY 10029.

25.     Upon information and belief, El Paso Taqueria 1643 Corp. is a domestic Corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 237 East 116th Street, New York, NY 10029, and its corporate headquarters at 2472 Grand Ave., Bronx, NY 10468.

26.     Defendant David Garnelo is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant David Garnelo is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant David Garnelo possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants,

including Plaintiffs, and establishes or established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

27.     Defendant Rodrigo Abrajam is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Rodrigo Abrajam is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Rodrigo Abrajam possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes or established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28.     Defendant Angel Garnelo (a.k.a. Angel Tepos) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Angel Garnelo (a.k.a. Angel Tepos) is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Angel Garnelo (a.k.a. Angel Tepos) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, and establishes or established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

29.     Defendants operate a Mexican restaurant located in the East Harlem section of Manhattan in New York City.

30.     The individual defendants, David Garnelo, Rodrigo Abrajam, and Angel Garnelo (a.k.a. Angel Tepos) possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, Individual Defendants David Garnelo, Rodrigo Abrajam, and Angel Garnelo (a.k.a. Angel Tepos) operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b.  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.   transferring assets and debts freely as between all Defendants,

    d.   operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e.   operating Defendant Corporations for their own benefit and maintaining control over these entities as closed Corporations,

    f.   intermingling assets and debts of their own with Defendant Corporations,

    g.   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h.   other actions evincing a failure to adhere to the corporate form.

36.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.    In each year from 2011 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

39.    Plaintiffs are former employees of defendants who were ostensibly employed as delivery workers. However, they spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

40.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alfredo Garcia-Daniel*

41.     Plaintiff Garcia-Daniel was employed by Defendants from approximately January 2016 until on or about July 8, 2017.

42.     Defendants ostensibly employed Plaintiff Garcia-Daniel as a delivery worker.

43.     However, Plaintiff Garcia-Daniel was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

44.     Although Plaintiff Garcia-Daniel was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

45.     Plaintiff Garcia-Daniel regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.     Plaintiff Garcia-Daniel's work duties required neither discretion nor independent judgment.

47.     From approximately January 2016 until on or about December 2016, Plaintiff Garcia-Daniel worked from approximately 6:00 p.m. until on or about 11:00 p.m. two days per week and from approximately 6:00 p.m. until on or about 12:00 a.m. two days per week (typically 22 hours per week).

48.     From approximately January 2017 until on or about July 8, 2017, Plaintiff Garcia-Daniel worked from approximately 6:00 p.m. until on or about 11:00 p.m. three days per week and from approximately 6:00 p.m. until on or about 12:00 a.m. two days per week (typically 27 hours per week).

49.     Throughout his employment, Defendants paid Plaintiff Garcia-Daniel his wages by check.

50.     From approximately January 2016 until on or about July 8, 2017, Defendants paid Plaintiff Garcia-Daniel $7.50 per hour.

51.     Defendants never granted Plaintiff Garcia-Daniel any break or meal period of any kind.

52.     Plaintiff Garcia-Daniel was never notified by Defendants that his tips were included as an offset for wages.

53.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia-Daniel's wages.

54.     Defendants withheld a portion of Plaintiff Garcia-Daniel's tips; specifically, Defendants balanced the offset in the cash register with portions of all tips Plaintiff Garcia-Daniel made.

55.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia-Daniel regarding overtime and wages under the FLSA and NYLL.

56.     Defendants did not give any notice to Plaintiff Garcia-Daniel, in English and in Spanish (Plaintiff Garcia-Daniel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

57.     Defendants required Plaintiff Garcia-Daniel to purchase "tools of the trade" with his own funds— including maintenance of his electric bicycle, one pair of pants, one pair of shoes, one helmet, one vest, one chain and one lock.

*Plaintiff Jilmar Daniel Ramirez*

58.     Plaintiff Ramirez was employed by Defendants from approximately September 2016 until on or about June 2017.

59.     Defendants ostensibly employed Plaintiff Ramirez as a delivery worker.

60.     However, Plaintiff Ramirez also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

61.     Although Plaintiff Ramirez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

62.     Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

63.     Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

64.     During his first two weeks of work on September 2016, Plaintiff Ramirez worked from approximately 6:00 p.m. until on or about 10:00 p.m. Mondays through Fridays (typically 20 hours per week).

65.     From approximately mid-September 2016 until on or about March 2017, Plaintiff Ramirez worked from approximately 11:00 a.m. until on or about 11:30 p.m. on Sundays, from approximately 6:00 p.m. until on or about 11:00 p.m. on Saturdays, from approximately 4:00 p.m. until on or about 10:00 p.m. four days per week and from approximately 4:00 p.m. until on or about 10:30 p.m. one day per week (typically 48 hours per week).

66.     From approximately April 2017 until on or about May 15, 2017, Plaintiff Ramirez worked from approximately 4:00 p.m. until on or about 10:00 p.m. Mondays through Fridays and from approximately 11:00 a.m. until on or about 11:30 p.m. on Sundays (typically 42.5 hours per week).

67.     From approximately May 16, 2017 until on or about June 2017, Plaintiff Ramirez worked from approximately 6:00 p.m. until on or about 11:00 p.m. Mondays through Fridays and from 11:00 a.m. until on or about 10:00 p.m. on Sundays (typically 36 hours per week).

68.     Throughout his employment, Defendants paid Plaintiff Ramirez his wages by check.

69.     From approximately September 2016 until on or about June 2017, Defendants paid Plaintiff Ramirez $7.50 per hour.

70.     Defendants never granted Plaintiff Ramirez any break or meal period of any kind.

71.     Plaintiff Ramirez was never notified by Defendants that his tips were being included as an offset for wages.

72.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

73.     Defendants withheld a portion of Plaintiff Ramirez's tips; specifically, Defendants balanced the offset in the cash register with portions of all tips Plaintiff Ramirez made.

74.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

75.     Defendants did not give any notice to Plaintiff Ramirez, in English and in Spanish (Plaintiff Ramirez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

76.     Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including an electric bicycle.

*Plaintiff Antony Odias Mejia Sapon*

77.     Plaintiff Mejia was employed by Defendants from approximately August 2016 until

on or about May 15, 2017.

78.     Defendants ostensibly employed Plaintiff Mejia as a delivery worker.

79.     However, Plaintiff Mejia was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

80.     Although Plaintiff Mejia was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

81.     Plaintiff Mejia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

82.     Plaintiff Mejia's work duties required neither discretion nor independent judgment.

83.     From approximately August 2016 until on or about November 2016, Plaintiff Mejia worked from approximately 6:00 p.m. until on or about 11:00 p.m. Sundays through Wednesdays and from approximately 11:00 a.m. until on or about 11:00 p.m. on Saturdays (typically 32 hours per week).

84.     From approximately December 2016 until on or about May 15, 2017, Plaintiff Mejia worked from approximately 4:00 p.m. until on or about 11:00 p.m. Mondays and Tuesdays, from approximately 6:00 p.m. until on or about 11:00 p.m. Wednesdays and Sundays, and from approximately 11:00 a.m. until on or about 11:00 p.m. on Saturdays (typically 36 hours per week).

85.     Throughout his employment, Defendants paid Plaintiff Mejia his wages by check.

86.     From approximately August 2016 until on or about May 15, 2017, Defendants paid Plaintiff Mejia $7.50 per hour.

87.     Defendants never granted Plaintiff Mejia any break or meal period of any kind.

88.     Plaintiff Mejia was never notified by Defendants that his tips were being included as an offset for wages.

89.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mejia's wages.

90.     Defendants withheld a portion of Plaintiff Mejia's tips; specifically, Defendants balanced the offset in the cash register with portions of all tips Plaintiff Mejia made.

91.     Furthermore, Defendants did not provide Plaintiff Mejia with a statement of wages with each payment of wages, as required by NYLL 195(3).

92.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

93.     Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

94.     Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including two bicycles, one helmet, two sets of lights, and one vest.

*Plaintiff Omar Morales*

95.     Plaintiff Morales was employed by Defendants from approximately June 2015 until on or about April 2017.

96.     Defendants ostensibly employed Plaintiff Morales as a delivery worker.

97.     However, Plaintiff Morales was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

98.     Although Plaintiff Morales was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

99.     Plaintiff Morales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

100.    Plaintiff Morales' work duties required neither discretion nor independent judgment.

101.    From approximately June 2015 until on or about December 2015, Plaintiff Morales worked from approximately 3:00 p.m. until on or about 11:00 to 11:30 p.m. Mondays through Fridays, and on occasion from approximately 3:00 p.m. until on or about 11:00 to 11:30 p.m. on Saturdays (typically 40 to 48.5 hours per week).

102.    From approximately January 2016 until on or about March 2016, Plaintiff Morales worked from 31 to 48 hours per week on Mondays through Fridays.

103.    From approximately April 2016 until on or about April 2017, Plaintiff Morales worked from approximately 5:00 p.m. until on or about 11:00 p.m. Mondays through Fridays (typically 30 hours per week).

104.    From approximately June 2015 until on or about December 2015, Defendants paid Plaintiff Morales his wages in cash.

105.    From approximately January 2016 until on or about April 2017, Defendants paid Plaintiff Morales his wages by check.

106.    From approximately June 2015 until on or about December 2015, Defendants paid Plaintiff Morales $4.65 per hour.

107.    From approximately January 2016 until on or about April 2017, Defendants paid Plaintiff Morales $7.50 per hour.

108.    Defendants never granted Plaintiff Morales any break or meal period of any kind.

109.    Plaintiff Morales was never notified by Defendants that his tips were being included as an offset for wages.

110.    Defendants did not account for these tips in any daily or weekly accounting of

Plaintiff Morales' wages.

111.    Defendants withheld a portion of Plaintiff Morales' tips; specifically, Defendants balanced the offset in the cash register with portions of all tips Plaintiff Morales made.

112.    Furthermore, Defendants did not provide Plaintiff Morales with a statement of wages with each payment of wages, as required by NYLL 195(3).

113.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

114.    Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

115.    Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, chain and lock, and two sets of lights.

*Defendants' General Employment Practices*

121.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work without paying them appropriate minimum wage, overtime, and spread of hours pay as required by federal and state laws.

122.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked either at the minimum wage rate or at an overtime premium, as applicable.

123.   Plaintiffs were victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the hours they had worked.

124.   Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

124.   Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

125.   Defendants required Plaintiffs to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers.

126.   These Plaintiffs were paid at either the lowered tip-credited rate or at a rate lower than that rate by Defendants. However, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y. C.R.R. § 146.

127.   New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4).  Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

128.   Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties including the Non-tipped, Non-Delivery Duties described above.

129.    In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate (or at a lower rate) when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

130.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

131.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

132.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

133.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage and overtime wage rate of time and a half for most or all of their hours worked in excess of forty (40) hours per week.

134.    Plaintiffs were paid their wages by check and in cash.

135.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

136.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) minimum wage, (3) overtime compensation, and (4) spread of hours pay.

137.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

138.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

139.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

140.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

141.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

142.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, had substantially similar job requirements and pay provisions.

143.    At all relevant times, Plaintiffs, and other members of the FLSA Class who were similarly situated, were subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at minimum wage or at overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

144.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or were similarly situated, were subject to Defendants' willful failure to keep records required by the FLSA.

145.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS

## OF THE FLSA

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

148.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

149.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

150.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs and the putative FLSA Class members, at the applicable minimum hourly rate.

151.    Defendants' failure to pay Plaintiffs and the putative FLSA Class members, at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

152.    Plaintiffs and the putative FLSA Class members, were damaged in an amount to be determined at trial.

<u>SECOND CAUSE OF ACTION</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE FLSA**

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

155.    Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

156.    Plaintiffs and the putative FLSA Class members, were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE NEW YORK MINIMUM WAGE ACT**

157.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

159.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

160.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

161.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS OF THE**

**NEW YORK STATE LABOR LAW**

162.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

164.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

165.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

166.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6.

168.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

169.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

170.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL

§195(1).

172.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

173.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

174.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

175.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**RECOVERY OF EQUIPMENT COSTS**

176.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

177.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

178.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)    Declaring that defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)    Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to

NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
         August 4, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     __/s/ Michael A. Faillace____
         Michael Faillace [MF-8436]
         60 East 42nd Street, Suite 4510
         New York, New York 10165
         Telephone: (212) 317-1200
         Facsimile: (212) 317-1620

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

July 13, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                   Alfredo Garcia-Daniel

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     July 13, 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 21, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Antony Odias Mejia Sapon

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         21 de junio de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                        Jilmar D. Ramirez

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                        July 26, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 25, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      <u>**Omar Morales**</u>

                                    <u>Michael Faillace & Associates, P.C.</u>

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                       <u>25 de julio de 2017</u>

*Certified as a minority-owned business in the State of New York*